UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| buySAFE, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Google Inc., <br><br> Defendant. | Civil Action No. <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff buySAFE, Inc. ("buySAFE" or "Plaintiff"), by and through its attorneys, hereby complains of Defendant Google Inc. ("Google" or "Defendant") as follows:

### NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 *et seq.* Plaintiff seeks to enjoin, and obtain damages resulting from, Defendant's unauthorized manufacture, use, sale, offer to sell, and/or importation into the United States for subsequent use or sale of products, methods, processes, services, and/or systems that infringe one or more claims of United States Patent No. 7,644,019, entitled "Safe Transaction Guaranty" (the "'019 Patent"), attached hereto as Exhibit A.

### PARTIES

2. Plaintiff buySAFE is a Delaware corporation with its principal place of business located at 1611 N. Kent Street #803, Arlington, Virginia 22209. buySAFE sells to Internet retailers a patented service that provides third-party certification and transactional guarantees for online merchants.

3. Defendant Google is a Delaware corporation with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, 35 U.S.C. § 271 *et seq*. Accordingly, this Court has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. §§ 1331 and 1338.

5. This Court has personal jurisdiction over Google because Google is incorporated in the State of Delaware, has transacted business in the State of Delaware, and has committed, and continues to commit, acts of patent infringement in the State of Delaware.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## FACTS

*buySAFE's Business*

7. The majority of consumers believe that shopping online is riskier than shopping at a brick and mortar store. These consumers worry that Internet transactions are less secure and that they will have greater difficulty in resolving issues with orders in the online shopping environment than they would at a brick and mortar store.

8. Founded in 2003, buySAFE was the first company to addresses the concerns of online shoppers by providing third-party certification and transactional guarantees for Internet retailers. Because there is significant consumer demand for such certification and guarantees, numerous Internet retailers have purchased buySAFE's services and offer buySAFE's transactional guarantees without cost to the consumers who make purchases on their websites. buySAFE is the owner by assignment of the '019 Patent. It is well known within the Internet retailer community that buySAFE's transaction guarantee services are patented.

9. buySAFE screens and continuously monitors participating online merchants to ensure their reliability and trustworthiness. Merchants that meet buySAFE's stringent criteria can display a buySAFE Trust Seal on their websites, and consumers who purchase on those websites are protected by a buySAFE purchase guarantee. buySAFE also provides online shoppers with identity theft protection and a same store low price guarantee.

10. The buySAFE Trust Seal is recognized by consumers as a certification that the online merchant is reliable and trustworthy and that the consumer will be protected if anything goes wrong with his or her purchase.

11. Numerous buySAFE merchants have tested the impact of offering the buySAFE purchase guarantee on their websites. They have experienced significant improvements in the percentage of visitors who make purchases from their sites and an increase in the dollar value of such purchases when the buySAFE purchase guarantee is offered to their customers than when the buySAFE guarantee is not offered.

*Google's Dealings with buySAFE*

12. In 2006 and 2008, Google sought to preempt buySAFE by entering into a joint venture or partnership with it. Google exploited those discussions to learn about buySAFE's business. Although buySAFE ultimately broke off discussions with Google, Google's interest in buySAFE's business continued.

13. Google also obtained access to buySAFE's proprietary information by, for example, hiring the former executive of a buySAFE customer who held extensive discussions with buySAFE's Tim Dardis, Todd Campbell, and David Ames between 2008 and 2010 and, consequently, learned a great deal about buySAFE's business. Before joining Google, and without disclosing his plans to move to Google and create a competing business, this individual pressed buySAFE for more information about its business.

14. In 2010, the aforementioned executive became Group Product Manager for a new Google venture called "Google Trusted Stores," which was modeled after buySAFE's business and patented methods and systems.

15. In addition to information gathered through discussions between buySAFE, on the one hand, and Google and its Group Product Manager for Google Trusted Stores, on the other hand, Google employees visited buySAFE.com on numerous occasions to investigate buySAFE's business and patented methods and systems. buySAFE has discovered a tremendous amount of visits to buySAFE.com from Google IP addresses since at least 2009. buySAFE's April 6, 2010 Press Release announcing the grant of its '019 Patent is posted on the buySAFE.com website.

16. Google, armed with buySAFE's proprietary business information and fully aware of the '019 Patent, launched Google Trusted Stores sometime in 2011. Google Trusted Stores is designed to compete directly with buySAFE by providing merchants with a trust seal and guaranteeing the purchases of online shoppers.

17. Google is currently testing Google Trusted Stores in preparation for a larger roll-out. On information and belief, there are approximately twenty merchants that are participating in the test, each of which was required to enter into a non-disclosure agreement with Google.

18. Even though Google Trusted Stores is at an early stage in its roll-out, Google's actions have already succeeded in drastically slowing buySAFE's annual growth rate.

*Introduction of Google Trusted Stores*

19. Google linked its Trusted Stores program to its established Internet advertising business (AdWords) by using its Internet advertising sales managers to introduce Google's new program, thereby linking its new Trusted Stores program with AdWords.

20. In or around October 2011, Google told at least two customers of buySAFE that participants in Google's Trusted Stores program will have an advantage with respect to the order in which Google's search results are displayed and promoted within Google search results. Indeed, that advantage is so significant that few, if any, online merchants will have any choice but to use Google's Trusted Stores program. Upon information and belief, Google has made the same representations to other buySAFE customers and potential customers.

21. In or around October 2011, Google told at least one customer of buySAFE that Google's Trusted Stores program is exclusive and that the account could not participate in both Google's Trusted Stores program and buySAFE's program. Upon information and belief, Google has made the same representations to other buySAFE customers and potential customers.

22. Google has offered to provide its Trusted Stores service to at least one customer of buySAFE free of charge – an offer that few, if any, Internet retailers can refuse. Upon information and belief, Google has made the same representations to other buySAFE customers and potential customers.

23. As a result, at least one customer of buySAFE has already acceded to Google's demands for exclusive participation and left buySAFE for Google's Trusted Stores program.

24. Google also appears to have timed the roll-out of its free Trusted Stores program so as to impede buySAFE's effort to raise additional capital, which buySAFE needs in order to expand its business.

25. Google's acts and practices have a dangerous probability of driving buySAFE from the market.

*Motivation Behind Google's Infringement*

26. When an online shopper visits a Google Trusted Stores merchant, Google's servers upload a cookie to the user's computer. The cookie is used by Google to track the user's activity on that merchant's website and on other Google Trusted Stores websites.

27. Through the cookie, Google is able to collect consumer purchase information, including: what websites the user has visited; what search terms the user used to arrive at the website; which pages the user views on the retailer's website; what items the user purchased and for how much; and the date and time of purchase. All of the consumer purchase information is automatically sent to Google, whether or not the user opts in for Google Trusted Stores' purchase guarantee.

28. If the user opts in for Google Trusted Stores' purchase guarantee, then the consumer purchase information is further associated with that user's Google Account.

29. On information and belief, Google intends to use this information to improve the targeting of its search advertisements to users, among other things. The additional profits Google will be able to earn from its advertising business will more than offset the cost of providing the Google Trusted Stores purchase guarantee to buySAFE's customers and potential customers at no charge.

<u>**COUNT I**</u>
**(Infringement of U.S. Patent No. 7,644,019)**

30. Plaintiff buySAFE incorporates by reference the allegations above as if fully set forth herein.

31. The patent-in-suit, the '019 Patent, was duly and legally issued on January 5, 2010.

32. Plaintiff buySAFE is the assignee of all right, title, and interest in and to the '019 Patent and has the legal right to enforce the patent-in-suit against the Defendant.

33. The '019 Patent is valid and enforceable.

34. Upon information and belief, Google makes, uses, sells, offers to sell, and/or imports into the United States for subsequent sale or use products, services, methods, or processes that infringe one or more of the claims of the '019 Patent, through its Google Trusted Stores program as implemented on its participating merchants' websites, including, but not limited to, Overstock.com, BabyAge.com, and Wayfair.com.

35. On information and belief, Google's infringement of the '019 Patent has been and continues to be willful and deliberate.

36. Plaintiff buySAFE has been irreparably harmed by the Defendant's infringement of its valuable patent rights by the loss of market share, goodwill, and bargaining position in buySAFE's negotiations to raise additional capital, for which there is no adequate remedy at law. Moreover, Defendant's unauthorized, infringing use of Plaintiff's patented system and method has threatened the value of this intellectual property because Defendant's conduct results in Plaintiff's loss of its lawful patent rights to exclude others from making, using, selling, offering to sell, and/or importing the patented inventions.

37. Defendant's disregard for Plaintiff's property rights similarly threatens Plaintiff's relationships with potential licensees of this intellectual property. Defendant will derive a competitive advantage over any of Plaintiff's future licensees from using Plaintiff's patented technology without paying compensation for such use. Accordingly, unless and until the

Defendant's continued acts of infringement are enjoined, Plaintiff will suffer further irreparable harm for which there is no adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

(a)   That Google has infringed one or more of the claims of each of the '019 Patent and that its infringement has been willful;

(b)   That buySAFE has been irreparably harmed by the infringing activities of Google;

(c)   That Google, its officers, agents, servants, employees and those persons in active concert or participation with any of them, as well as all successor or assignees of the interests or assets related to the Google Trusted Stores program, be preliminarily and permanently enjoined from further infringement of the '019 Patent;

(d)   That an accounting be had for the damages caused to buySAFE by the infringing activities of Google;

(e)   That buySAFE be awarded damages adequate to compensate for Google's infringement, which shall include lost profits but in no event shall be less than a reasonable royalty for the use made of the inventions of buySAFE's '019 Patent by Google including pre- and post-judgment interest, and costs, including expenses;

(f)   That, once actual damages are assessed, damages so ascertained be trebled in view of the willful and deliberate nature of the infringement and be awarded to buySAFE, with interest;

(g)   That this be declared an exceptional case and that buySAFE be awarded reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

(h)     That buySAFE be awarded such further necessary or proper relief as this Court may deem just, adequate and necessary.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, buySAFE hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

Date: December 22, 2011

FARNAN LLP

By: /s/ Brian E. Farnan
Joseph J. Farnan, Jr. (Bar No. 100245)
Brian E. Farnan (Bar No. 4089)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (fax)
farnan@farnanlaw.com
bfarnan@farnanlaw.com

Of Counsel:

Paul R. Gupta
Clifford R. Michel
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York  10019
Tel: 212-506-5000
Fax: 212-506-5151

Garret G. Rasmussen
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C.  20005
Tel: 202-339-8400
Fax: 202-339-8500