IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BUYSAFE, INC.,                    )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        C.A. No. 11-1282 (LPS)
                                  )
GOOGLE INC.,                      )
                                  )
                Defendant.        )

**DEFENDANT GOOGLE'S OPENING BRIEF IN
SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
    *Attorneys for Google Inc.*

OF COUNSEL:

A. John P. Mancini
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820
(212) 506-2500

Brian A. Rosenthal
Ann Marie Phillips
MAYER BROWN LLP
1999 K Street, N.W.
Washington DC 20006-1101
(202) 263-3000

July 9, 2012

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

I.     NATURE AND STAGE OF THE PROCEEDING .................................................... 1

II.    SUMMARY OF ARGUMENT ................................................................................ 1

III.   STATEMENT OF FACTS ...................................................................................... 2

IV.   ARGUMENT .......................................................................................................... 6

     A.    Legal Standard for Judgment On the Pleadings .......................................... 6

     B.    The '019 Patent Is Invalid Under 35 U.S.C. § 101 .................................... 7

          1.    The independent claims of the '019 Patent fails the machine-or-transformation test ................................................................... 8

              *a.*   *The independent claims of the '019 Patent are not tied to any particular machine* ................................................. 8

              *b.*   *The independent claims of the '019 Patent do not transform any article* ......................................................... 11

          2.    The independent claims of the '019 Patent are simply directed to an unpatentable abstract idea .................................................. 12

          3.    The dependent claims of the '019 Patent are also unpatentable ............. 14

     C.    buySAFE Can Find No Support In the Case Law That the '019 Patent is Valid Under Section 101 ...................................................................... 16

V.    CONCLUSION ..................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Accenture Global Servs. GmbH v. Guidewire Software, Inc.*,
    691 F. Supp. 2d 577 (D. Del. 2010)..................................................9, 11, 15

*Accenture Global Servs. v. Guidewire Software, Inc.*,
    800 F. Supp. 2d 613 (D. Del. 2011).........................................................14

*Allah v. Al-Hafeez*,
    226 F.3d 247 (3rd Cir. 2000) ....................................................................6

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*,
    771 F. Supp. 2d 1054 (E.D. Mo. 2011).................................................7, 9

*Bayer Chems. Corp. v. Albermarle Corp.*,
    171 F. App'x 392 (3rd Cir. 2006) ..............................................................6

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010)................................................................... *passim*

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008),,
    130 S. Ct. 3218 (2010)................................................................... *passim*

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
    768 F. Supp. 2d 221 (D.D.C. 2011) ..........................................................7

*In re Comiskey*,
    554 F.3d 967 (Fed. Cir. 2009).................................................................13

*CyberSource Corp. v. Retail Decisions, Inc.*,
    620 F. Supp. 2d 1068 (N.D. Cal. 2009) .....................................................7

*CyberSource*,
    654 F.3d 1366 (Fed. Cir. 2011).................................................... *passim*

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012).........................................................13, 14

*Diamond v. Diehr*,
    450 U.S. 175 (1981)................................................................................13

*Ex Parte Cherkas*,
    No. 2009-11287, 2010 WL 4219765 (B.P.A.I. Oct. 25, 2010) ..................9

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Ferguson*,
  558 F.3d 1359 (Fed. Cir. 2009)..............................................................................8, 12

*Glory Licensing LLC v. Toys R Us, Inc.*,
  No. 09-4252 (FSH), 2011 WL 1870591 (D.N.J. May 16, 2011)..............................7

*Gottschalk v. Benson*,
  409 U.S. 63 (1972).............................................................................................11, 13

*Graff/Ross Holdings LLP v. Fed. Home Loan Mortg. Corp.*,
  No. 07-796 (RJL)(AK), 2010 WL 6274263 (D.D.C. Aug. 27, 2010) .......................7

*Oran v. Stafford*,
  226 F.3d 275 (3rd Cir. 2000) ....................................................................................6

*Research Corp. Techs. v. Microsoft Corp.*,
  627 F.3d 859 (Fed. Cir. 2010) .................................................................................16

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
  601 F.3d 1319 (Fed. Cir. 2010)..................................................................................8

*Ultramercial v. Hulu*,
  657 F.3d 1323 (Fed. Cir. 2011)................................................................................17

*WildTangent, Inc. v. Ultramercial, LLC*,
  No. 11-962, 2012 WL 369157 (May 21, 2012) .......................................................17

**STATUTES**

35 U.S.C. § 101.................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 1........................................................................................................6

Fed. R. Civ. P. 12(c) .................................................................................................6

**TREATISES**

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
  § 1342 (3d ed. 2004)..................................................................................................6

I.   **NATURE AND STAGE OF THE PROCEEDING**

Plaintiff buySAFE, Inc. ("buySAFE") brought this action on December 22, 2011, alleging that Google Inc.'s ("Google") Trusted Stores program infringes U.S. Patent No. 7,644,019 ("the '019 Patent").[1]  Google answered the Complaint on February 28, 2012, denying infringement and asserting that the patent is invalid.

The parties exchanged their first round of discovery requests on May 23, 2012, and have just begun producing documents.  There are currently no motions pending.

II.   **SUMMARY OF ARGUMENT**

The '019 Patent is directed to the abstract idea of providing a performance guaranty for online commercial transactions.  As recently confirmed by the Supreme Court in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010), such abstract ideas are unpatentable under 35 U.S.C. § 101. To be patentable, claims must recite meaningful limitations on an idea to bring it from an abstract unpatentable concept to a concrete patentable invention.  Recent Federal Circuit cases applying *Bilski* make clear that claims such as those of the '019 Patent are not valid.

As Internet commerce became more common, people began applying decades-old transactional service models, including purchase protection, to online purchases.  In that vein, the '019 Patent is directed to "methods and systems providing a performance guaranty in a transaction."  Independent claims 1 and 39 recite three basic steps: a) one party to the online transaction requests a guaranty of its own performance; b) a third party processes the request by underwriting the requesting party; and c) the third party binds the guaranty to the transaction following closing, guaranteeing (*e.g.*, with a surety bond) the performance of the requesting party.

Although the claims recite the terms "computer," "computer application," and  "computer

---

[1] The '019 Patent is Exhibit 1 to buySAFE's Complaint (D.I. 1).

network," these are merely generic recitations of general purpose computers. All the steps necessary to perform the claimed method can be—and often are as the patent discloses—performed manually. On their face, not a single independent or dependent claim is tied to any particular special-purpose computer. Moreover, none of the claims disclose that any article is transformed into a different state or thing. Recent Supreme Court and Federal Circuit decisions have made clear that merely adding claim language with the term "computer" does not confer patentability. Because the '019 Patent claims no more than the abstract idea of guaranteeing an online commercial transaction, it is invalid on its face.

This case is ripe for resolution on the pleadings because no discovery is needed to resolve the patentability of the claims, and there are no claim construction issues that bear on whether the claims recite an unpatentable abstract idea. Judgment on the pleadings should be entered to avoid unnecessary litigation and a drain on the resources of the Court and the parties.

## III.   STATEMENT OF FACTS

The '019 Patent issued January 5, 2010 to inventors Steven L. Woda and Jeffrey E. Grass, who—as recent business school graduates—filed their application on April 21, 2003. Claim 1 of the '019 Patent reads as follows:

A method, comprising:

receiving, by at least one computer application program running on a computer of a safe transaction service provider, a request from a first party for obtaining a transaction performance guaranty service with respect to an online commercial transaction following closing of the online commercial transaction;

processing, by at least one computer application program running on the safe transaction service provider computer, the request by underwriting the first party in order to provide the transaction performance guaranty service to the first party,

wherein the computer of the safe transaction service provider offers, via a computer network, the transaction performance guaranty service that binds

2

> a transaction performance guaranty to the online commercial transaction involving the first party to guarantee the performance of the first party following closing of the online commercial transaction.

'019 Patent, at col. 17:10-28.

Claim 39, the only other independent claim of the '019 Patent, is similarly worded, but recited as a "machine readable medium":

> A machine readable medium, encoded with instructions, that when executed by a machine, result in the following:
>
> receiving, by at least one computer application running on a computer of a safe transaction service provider, a request from a first party for obtaining a transaction performance guaranty service with respect to an online commercial transaction;
>
> processing, by at least one computer application running on the safe transaction service provider computer, the request by underwriting the first party in order to provide the transaction performance guaranty service to the first party,
>
> wherein the safe transaction service provider computer offers, via computer network, the transaction performance guaranty service that binds a transaction performance guaranty to the online commercial transaction involving the first party to guarantee the performance of the first party in response to a closing of the online commercial transaction.

See id. at col. 20:45-64.  Although there are some differences in the steps of claims 1 and 39, those differences are not germane to this motion.

The specification of the '019 Patent describes that the invention is simply a method for providing a performance guaranty for an online transaction.  Figure 1 is exemplary of one of the embodiments:

3



## Fig. 1

As shown above, the patent contemplates three parties: a Buyer (110), a Seller (120), and

a Safe Transaction Service Provider (130). The underlying transaction is between the Buyer and

Seller. '019 Patent, at col. 3:33-34. According to the specification, either the Buyer or the Seller

may request a performance guaranty service from the Safe Transaction Service Provider. *Id.* at

col. 3:44-49. If the party whose performance is guaranteed defaults in the underlying transaction

(*e.g.*, the Seller fails to deliver the goods promised), the guaranty is exercised. *Id.* at col. 3:57-

64.

The specification states that the performance guaranty can take any number of forms of

well-known financial instruments. "It may be offered in the form of a surety bond 220, a

specialized bank guaranty 230, … , a specialized insurance policy 240, or in a form of a safe

transaction guaranty 250." *Id.* at col. 4:11-13. Figure 2 depicts these options:

4



The specification sets forth the method by which the transaction performance guaranty is obtained, which is the subject of the claims.  The Safe Transaction Service Provider

> underwrites each applicant requesting different services.  There may be a separate and distinct underwriter 140 involved in the process or the underwriter 140 may be part of the safe transaction service provider 130.

*Id.* at col. 6:38-42.  The specification explicitly notes that the "underwriting" process performed by the Safe Transaction Service Provider can be done *manually*: "[t]he underwriter may be a person, a corporation that carries out the underwriting process either manually or automatically through a computer application program or semi-automatically."  *Id.* at col. 6:57-60.

Figures 8-18 of the specification show "flows of different exemplary processes" that are carried out by the Safe Transaction Service Provider.  *Id.* at col. 8:53-64.  Notably, there is no description anywhere in the '019 Patent of any devices that should carry out the processes described by those flow charts.  Indeed, the word "computer" is used only once in the written description of the '019 Patent, in the description of the underwriting function.  *Id.* at col. 6:57-60.  The specification also makes clear that although the communications with the Safe Transaction Service Provider are made over a network, there are no limits whatsoever as to what type of network can be used:

> [t]he communications between the safe transaction service provider 130 and the outside world may be conducted via a network 815.  The network

> 815 is a generic one, which may represent the Internet, a proprietary
> network, a virtual private network, a telephone network, a cable network,
> a wireless network, a local area network (LAN), a wide area network
> (WAN), or a combination thereof.

*Id.* at col. 9:37-43 (emphasis added).

## IV.   ARGUMENT

The question presented by this motion is whether the idea of applying the decades-old

principle of performance guaranties can be patented when applied to online transactions.  Recent

case law establishes that such abstract ideas are not patentable subject matter under 35 U.S.C. §

101.

### A.   Legal Standard for Judgment On the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The objective of Federal Rule 12 is to

expedite and simplify the pretrial phase of federal litigation...."  5B Charles Alan Wright &

Arthur R. Miller, *Federal Practice and Procedure* § 1342 (3d ed. 2004).  Rule 12 is in full

accordance with the mandate in Federal Rule 1 for "the just, speedy, and inexpensive

determination of every action and proceeding."  Fed. R. Civ. P. 1.  By making this motion early

in the proceedings, Google hopes to resolve this matter as quickly and efficiently as possible.

Judgment on the pleadings is entirely proper when the moving party clearly establishes

on the face of the pleadings that no material issue of fact remains to be resolved and that the

movant is entitled to judgment as a matter of law.  *Bayer Chems. Corp. v. Albermarle Corp.,* 171

F. App'x 392, 397 (3rd Cir. 2006).  In resolving this motion, the allegations of Plaintiff are

assumed to be true.  *See, e.g., Oran v. Stafford,* 226 F.3d 275 (3rd Cir. 2000); *Allah v. Al-Hafeez,*

226 F.3d 247 (3rd Cir. 2000).  Likewise all reasonable inferences should be drawn in favor of

Plaintiff.  *See, e.g., Oran,* 226 F.3d 275.  Here, no factual issues are germane to this motion;

judgment of invalidity based solely on the pleadings in this case is warranted because the '019 Patent is invalid on its face.

In this particular case, invalidity under 35 U.S.C. § 101 is perfectly suited for resolution in a motion for judgment on the pleadings. After all, the pleadings themselves are the threshold of litigation, and the question of whether the '019 Patent is drawn to patent-eligible subject matter is a "threshold inquiry." *In re Bilski,* 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos,* 130 S. Ct. 3218 (2010). Thus, in cases such as this one, where a patent has been asserted that is invalid on its face and no discovery or extraneous facts are needed, judgment on the pleadings is warranted. *See, e.g., CLS Bank Int'l v. Alice Corp. Pty. Ltd.,* 768 F. Supp. 2d 221 (D.D.C. 2011); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.,* 771 F. Supp. 2d 1054 (E.D. Mo. 2011); *Glory Licensing LLC v. Toys R Us, Inc.,* No. 09-4252 (FSH), 2011 WL 1870591 (D.N.J. May 16, 2011); *CyberSource Corp. v. Retail Decisions, Inc.,* 620 F. Supp. 2d 1068 (N.D. Cal. 2009), *aff'd,* 654 F.3d 1366 (Fed. Cir. 2011); *Graff/Ross Holdings LLP v. Fed. Home Loan Mortg. Corp.,* No. 07-796 (RJL)(AK), 2010 WL 6274263 (D.D.C. Aug. 27, 2010) (Report and Recommendation of Magistrate Kay). This patent is especially suited to early resolution since there are no claim construction issues that have any bearing on the legal issues presented by this motion.

**B.    The '019 Patent Is Invalid Under 35 U.S.C. § 101**

The '019 Patent does not disclose "any new [or] useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. As such the '019 Patent is not valid under 35 U.S.C. § 101. Although Section 101 is broad and provides liberally for patentable subject matter, it is not limitless. Over the years case law has developed three well-known exceptions to patentable subject matter under 35 U.S.C. § 101: (1) laws of nature; (2) physical phenomena; and (3) abstract ideas. *See, e.g., Bilski,* 130 S. Ct. at 3225.

7

These exceptions are consistent with and reinforce the call in Section 101 for "new and useful" inventions. *See id.*

Because deciphering an abstract idea from a patentable process can be difficult, courts have developed a number of tests to assist in the determination. While there is currently no single "per se" test to distinguish "abstract ideas" from patentable processes, the machine-or-transformation test comes closest. *See id.* at 3221. The machine-or-transformation test makes two inquiries about an invention: (1) is the invention tied to a particular machine or apparatus? and (2) does the invention transform a particular article into a different state or thing? If the answer to those questions is no, the invention is not patentable. *See id.* at 3225. Unnecessary or non-limiting language is not enough to satisfy the test. The use of a specific machine or a specific transformation "must impose meaningful limits on the claim's scope to impart patent-eligibility." *In re Bilski*, 545 F.3d at 961-62. As shown below, the '019 Patent fails the machine-or-transform test because it is not tied to any particular machine and does not transform any particular article. Even apart from the machine-or-transformation test, the patent is invalid because it claims an abstract idea, which is a legally-recognized exception to patentability.

1.    The independent claims of the '019 Patent fails the machine-or-transformation test

   a.    *The independent claims of the '019 Patent are not tied to any particular machine*

Claims 1 and 39 are not tied to any particular machine. To pass the machine portion of the machine-or-transformation test, claims must be tied to a "concrete" machine, one with "parts" or "certain devices" or a combination of devices. *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332 (Fed. Cir. 2010) (citing *In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009)). Merely adding limitations to claims of generic recitations to a computer is not enough and "not every patent that recites a machine...passes the machine-or-transformation

8

test." *Bancorp. Servs.,* 771 F. Supp. 2d at 1063 ; *see also Accenture Global Servs. GmbH v. Guidewire Software, Inc.,* 691 F. Supp. 2d 577, 597-98 (D. Del. 2010).

Although claims 1 and 39 recite a "computer application program," a "computer," "computer network" and even a "machine readable medium," such terms are nothing more than "insignificant extra-solution[s]." *Bilski,* 545 F.3d at 957-58 n.14, 962; *see also Bancorp Servs.,* 771 F. Supp. 2d at 1065 ("The recitation of the computer, computer system, and computer readable media do not satisfy the 'machine' prong of the machine-or-transformation test."). There are no structural limitations recited in the claims of the '019 Patent that narrow the "computer implemented method" to something more specific than a general purpose computer, nor are there any specific operations performed in the claims that would structurally define the "computer." *Ex Parte Cherkas,* No. 2009-11287, 2010 WL 4219765, at *3 (B.P.A.I. Oct. 25, 2010) (Claims in patent application are invalid under 35 U.S.C. § 101 because they "neither refer to a specific machine by reciting structural limitations that narrow the computer implemented method to something more specific than a general purpose computer, nor recite any specific operations performed that would structurally define the computer.").

Rather, both the claims themselves and the specification make clear that the processes disclosed in the claims can be and often are performed *manually.* For example, Claims 1 and 39 recite "processing…the request [for a transaction performance guaranty] by underwriting the first party." The specification explicitly states that "[t]he underwriter may be *a person,* a corporation that carries out the underwriting process either *manually* or automatically through a computer application program or semi-automatically." '019 Patent at col. 6:57-60 (emphasis added).

The Federal Circuit held that claims very similar to those in the '019 Patent were invalid

under Section 101 for failing to disclose anything more than a mental process. *See CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1370 (Fed. Cir. 2011). In *Cybersource,* the asserted patent recited a "'method and system for detecting fraud in a credit card transaction between [a] consumer and a merchant over the Internet.'" *Id.* at 1367 (citation omitted). One of the asserted claims of the patent recited "A computer readable medium containing program instructions" for detecting fraud in credit card transactions by obtaining credit card information and verifying the credit card information by: (1) obtaining information about other transactions that have utilized an Internet address that is identified with the credit card transaction; (2) constructing a map of the credit card numbers based upon the other transactions; and (3) utilizing the map to determine if the transaction is valid. *See id.* at 1373. The Federal Circuit held that all three steps for verifying the credit card information can be performed in the human mind or by a human using a pen and paper. *See id.* at 1372. The Court specifically noted that the claim is not limited to a particular fraud detection algorithm and that no algorithms are disclosed in the patent's specification. Rather, regardless of how claim language is crafted, the underlying invention is a method for detecting credit card fraud which is only aided by a computer. *See id.* at 1374-75.

Similarly, the underlying invention of the '019 Patent is merely the mental process of underwriting a party in an online commercial transaction. Claims 1 and 39 recite "receiving…a request from a first party for obtaining a transaction performance guaranty service with respect to an online commercial transaction," then "processing…the request by underwriting the first party in order to provide the transaction performance guaranty service to the first party," and finally "offer[ing]…the transaction performance guaranty service that binds a transaction performance guaranty to the online commercial transaction…." '019 Patent at col. 17:10-28, 20:45-64.

Although these claims recite that a computer sends the request, processes the request and offers the transaction performance guaranty service, as in *Cybersource*, the computer is being used only to perform the mental process disclosed in the claims, the recited computer does not play a significant part in permitting the claimed method to be performed. *See Cybersource*, 654 F.3d at 1375-76; *see also* '019 Patent at col. 17:10-28, 20:45-64.

b.   *The independent claims of the '019 Patent do not transform any article*

Claims 1 and 39 also do not transform any article.  When a process does not include a particular machine, then "[t]ransformation and reduction of an article 'to a different state or thing' is the clue to...patentability." *Gottschalk v. Benson,* 409 U.S. 63, 70 (1972); *see also Bilski,* 130 S. Ct. at 3226-27.  The mere manipulation and reorganization of data does not satisfy the transform prong of the machine-or-transformation test.  *See CyberSource,* 654 F.3d at 1375. Moreover, collecting and organizing data also is not a "transformation" for the purposes of the machine-or-transformation test. *See id.* at 1370 ("The mere collection and organization of data regarding credit card numbers and Internet addresses is insufficient to meet the transformation prong of the test."); *see also Accenture,* 691 F. Supp. 2d at 596.

The '019 Patent discloses nothing more than the manipulation and organization of business and legal documents and relationships to underwrite a party requesting a transaction performance guaranty.  Specifically, Claim 1 recites "receiving...a request from a first party for obtaining a transaction performance guaranty service...processing...the request by underwriting the first party...wherein the computer...offers...the transaction performance guaranty service that binds a transaction performance guaranty...." '019 Patent at col. 17:10-28.   To perform the service,

> [t]he underwriter 140 may communicate with different entities to gather relevant information in order to make a qualification decision about each service applicant.

11

It may gather credit information from different credit agencies 150. It may also collect, either internally or externally, ratings of a merchant from various rating information sources 160. In some situations, the underwriter 140 may also examine different governmental archives 170 to identify court proceedings in which an applicant is a party indicating the applicant's alleged or convicted wrongful conduct. Furthermore, the underwriter 140 may also look up data from other public information sources 180 that may reflect the qualification of an applicant.

*Id.* at col. 6:43-55.  This disclosure shows that the underwriting step (claimed to be performed by a computer) merely involves gathering and manipulation of data.  Such a process fails to transform a specific article into a different state or thing.  *In re Bilski,* 545 F.3d at 962.

The Federal Circuit has made clear that

[p]urported transformations or manipulations simply of public or *private legal obligations* or relationships, *business risks,* or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances.

*Id.* at 963 (emphasis added); *see also In re Ferguson,* 558 F.3d 1359, 1364 (Fed. Cir. 2009) ("Nor do Applicants' methods, as claimed, transform any article into a different state or thing. At best it can be said that Applicants' methods are directed to organizing business or legal relationships…."). The supposed invention in the '019 Patent covers nothing more than the manipulation and organization of business and legal documents and relationships and thus does not meet the transform portion of the machine-or-transformation test.

2.  The independent claims of the '019 Patent are simply directed to an unpatentable abstract idea

On its face, the '019 Patent is directed to abstract concepts that are not patentable.  The Supreme Court has made it clear that while the machine-or-transformation test may be helpful, there is currently no single, *per se* test for what is patentable under 35 U.S.C. § 101 and the analysis cannot simply stop there.  *See CyberSource,* 654 F.3d at 1371; *accord Bilski,* 130 S. Ct. at 3227.  Therefore, even though the '019 Patent is not tied to any particular machine and does

not do any transformation, the Court must still consider whether the patent is really directed to abstract ideas such as "mental processes, and abstract intellectual concepts" that "are not patentable." *Benson,* 409 U.S. at 67.

Nothing in the claims of the '019 Patent is tied to any physical article or any non-abstract concept.  The independent claims of the '019 Patent recite "receiving…a request," "processing…the request," and "offer[ing]…the transaction performance guaranty service that binds a transaction performance guaranty to the…transaction." '019 Claims 1 and 39. As is clear from the wording of the claims and the description in the specification, everything in these claims can be performed in a person's mind (or with a pen and paper) and "methods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas." *CyberSource,* 654 F.3d at 1371 (citing *Benson,* 409 U.S. at 67).  Moreover, "the prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.'" *Bilski,* 130 S. Ct. at 3230 (quoting *Diamond v. Diehr,* 450 U.S. 175, 191-92 (1981)).

The Federal Circuit has consistently "'refused to find processes patentable when they merely claimed a mental process standing alone and untied to another category of statutory subject matter[,] even when a practical application was claimed.'" *CyberSource,* 654 F.3d at 1372 (quoting *In re Comiskey,* 554 F.3d 967, 980 (Fed. Cir. 2009)).  Earlier this year the Federal Circuit reiterated this holding in *Dealertrack, Inc. v. Huber,* 674 F.3d 1315, 1317 (Fed. Cir. 2012).  In *Dealertrack,* the asserted patents were directed to a "computer-aided method and system…for processing credit applications over electronic networks." *See id.* at 1317.  The Court found that in its simplest form, the claimed process includes three steps: "receiving data from one source (step A), selectively forwarding the data (step B), performed according to (step

13

D), and forwarding reply data to the first source (step C)." *Id.* at 1333. The Court concluded

that the claims at issue do not require a specific application nor are they tied to a particular

machine; rather the computer is merely recited to aid in the underlying process. *See id.* at 1333-

1334. The Court held that "The claim 'explain[s] the basic concept' of processing information

through a clearing-house" and that "[n]either Dealertrack nor any other entity is entitled to

wholly preempt the clearinghouse concept." *Id.* at 1333 (quoting *Bilski*, 130 S. Ct. at 3231).

Similarly, buySAFE is not entitled to wholly preempt the online performance guaranty concept.

The abstract idea of a guaranty service has been implemented for decades by retailers and

consumers with their own mental thoughts, verbal acknowledgements, and written bonding and

insurance forms. *See, e.g., Accenture Global Servs. v. Guidewire Software, Inc.*, 800 F. Supp. 2d

613, 621-22 (D. Del. 2011).

When stripped of their computer-oriented veneer, the claims of the '019 Patent claim

nothing less than the general concept of insurance, done for decades by merchants and

consumers with their own mental thoughts, verbal acknowledgements, and written bonding and

insurance forms. As such the claims of the '019 Patent are not valid under Section 101.

3.    The dependent claims of the '019 Patent are also unpatentable

The dependent claims similarly claim unpatentable subject matter and are thus invalid

under 35 U.S.C. § 101 for the same reasons as set forth above. The vast majority of the

dependent claims simply add non-functional limitations to the independent claims, such as the

relationship of the underwriter and the safe transaction service provider, the nature of the buyer

and seller, the type of online transaction, the form of the guaranty, additional steps to file and

process a claim under the guaranty, additional steps to bind the guaranty to the transaction, and

additional steps that are taken as part of the underwriting process. None of the dependent claims

recite any special-purpose machine or other concrete limitations that bring the claims from

abstract unpatentable business processes into patentable subject matter.

buySAFE may try to rely on claims 22-30 and 48 in an attempt to identify some connection to a special-purpose machine.  Claims 22 and 48, which are very similar, both recite "generating a seal" that represents the guaranty service, intended to be used as a seal of approval for online merchants.[2]  Describing this feature, the specification notes that:

> [t]here may be different approaches that may be employed to incorporate the seal into a posting. FIG. 10(c) describes different exemplary means for incorporating a seal 1050. It may be incorporated *manually* (1055) or automatically (1060). *When a manual approach is adopted, the generated code is provided to the subscriber and can then be pasted into the code used to post the registered transaction.*"

'019 Patent, at col. 12:5-12 (emphasis added).  Nothing in the claims require that the incorporation of a seal be performed by a machine.  Indeed, claim 25, which depends from claim 22 states that the incorporation of a seal can include "a *manual* incorporation process." *Id.* at col. 19:18-33 (emphasis added).

Moreover, there is nothing in claims 22-30 or 48 that requires or even suggests that the generation of the seal be accomplished by some special-purpose machine.  Indeed, claim 24, which depends from claim 22, recites that the seal can take the form of HTML code or XML code, both of which are high level computer programming languages easily and commonly generated manually by a person.  *Id.* at col. 19:13-22:17; *see also Accenture*, 691 F. Supp. 2d at 597-98.

Because none of the dependent claims add any meaningful limitations in scope, they too are unpatentable under 35 U.S.C. § 101.

---

[2] Claims 23-30 depend from claim 22.

15

C.   **buySAFE Can Find No Support In the Case Law That the '019 Patent is Valid Under Section 101**

None of the cases finding patentable subject matter save the validity of the '019 Patent.

First, buySAFE may attempt to analogize the claims of the '019 Patent to those at issue in

*Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010).  However, the

invention at issue in *Research Corp.* was a far more complex application of ideas than the

abstract idea of Internet performance guaranties claimed by buySAFE.  Specifically, in *Research

Corp.*, the patents at issue related to digital image halftoning, a process that allows computers to

present many shades of color tones in a digital image with a limited number of pixel colors.

*Research Corp.*, 627 F.3d at 862-63.  An exemplary claim considered by the Federal Circuit

reads:

> 1. A method for the halftoning of gray scale images by utilizing a pixel-by-pixel
> comparison of the image against a blue noise mask in which the blue noise mask
> is comprised of a random non-deterministic, non-white noise single valued
> function which is designed to produce visually pleasing dot profiles when
> thresholded at any level of said gray scale images.

> *Id.* at 865.

The court held that the invention "presents functional and palpable applications in the

field of computer technology" and thus was not abstract.  *See id.* at 868.  The court also noted

that "inventions with specific applications or improvements to technologies in the marketplace

are not likely to be so abstract that they override the statutory language and framework of the

Patent Act." *Id.* at 869.  Unlike the '019 patent claims, which the specification itself teaches can

be performed manually, the method claimed in *Research Corp.* was so complex that by its nature

it required a special-purpose computer to implement it.  Indeed, in the *CyberSource* case, the

Federal Circuit distinguished *Research Corp.* on that basis:

> Similarly, in *Research Corp. Techs. . . .*, we upheld the patentability of a claimed
> method "for rendering a halftone image of a digital image by comparing, pixel by

16

pixel, the digital image against a blue noise mask." Because the method required the manipulation of computer data structures (e.g., the pixels of a digital image and a two-dimensional array known as a mask) and the output of a modified computer data structure (a halftoned digital image), the method could not, as a practical matter, be performed entirely in a human's mind.

*CyberSource*, 654 F.3d at 1376 (internal citation omitted).

Second, buySAFE can no longer rely on the holding in *Ultramercial v. Hulu*, 657 F.3d 1323, 1328 (Fed. Cir. 2011) where the Federal Circuit held the claims valid in light of Section 101 as they "are likely to require intricate and complex computer programming," because the Supreme Court recently vacated this decision. *See WildTangent, Inc. v. Ultramercial, LLC*, No. 11-962, 2012 WL 369157 (May 21, 2012), vacating the Federal Circuit's decision in *Ultramercial*.

Even had *Ultramercial* not been vacated, the claims at issue in that case recited a 10-step process summarized by the Court as:

> (1) receiving media products from a copyright holder, (2) selecting an advertisement to be associated with each media product, (3) providing said media products for sale on an Internet website, (4) restricting general public access to the media products, (5) offering free access to said media products on the condition that the consumer view the advertising, (6) receiving a request from a consumer to view the advertising, (7) facilitating the display of advertising and any required interaction with the advertising, (8) allowing the consumer access to the associated media product after such display and interaction, if any, (9) recording this transaction in an activity log, and (10) receiving payment from the advertiser.

*Ultramercial*, 657 F.3d at 1328. The claimed process thus defines a complex user interface that carefully specifies each step of the interaction between the user and the media product over the Internet, a far more complex process than that disclosed in the '019 Patent.

In contrast to *Research Corp.* and *Ultramercial*, the '019 patent claims do not recite a process so complex that it necessitates complex programming, nor do they define an extensive computer interface. Instead, but for the liberal insertion of the word "computer," the claims

recite the mere idea of a performance guaranty of an online transaction, along with the necessary steps of requesting such a guaranty and processing the request. Such claims are not patentable.

## V.    CONCLUSION

Because it is directed solely to abstract concepts, the '019 Patent is invalid under 35 U.S.C. § 101 on its face. No amount of time, resources, or discovery can change that. The most efficient use of this Court's resources is to rule on the pleadings and find this patent invalid.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
  *Attorneys for Google Inc.*

OF COUNSEL:

A. John P. Mancini
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820
(212) 506-2500

Brian A. Rosenthal
Ann Marie Phillips
MAYER BROWN LLP
1999 K Street, N.W.
Washington DC 20006-1101
(202) 263-3000

July 9, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 9, 2012, upon the following in the manner indicated:

Joseph J. Farnan, Jr., Esquire                          *VIA ELECTRONIC MAIL*
Brian E. Farnan, Esquire
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE  19801

Paul R. Gupta, Esquire                                    *VIA ELECTRONIC MAIL*
Clifford R. Michel, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

Garret G. Rasmussen, Esquire                        *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, DC  20005

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)

1