IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRIC OF DELAWARE

| | |
|---|---|
| BUYSAFE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 11-1282 (LPS) |
| | ) |
| GOOGLE, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF BUYSAFE, INC.'S MEMORANDUM REGARDING
SUPPLEMENTAL AUTHORITY IN OPPOSITION TO
MOTION FOR JUDGMENT ON THE PLEADINGS [D.I. 31]**

Dated: May 28, 2013

Stephen M. Hankins (admitted *pro hac vice*)
Alison Maddeford (admitted *pro hac vice*)
SCHIFF HARDIN LLP
One Market
Spear Street Tower, 32nd Floor
San Francisco, CA 94105
Telephone: (415) 901-8756
Facsimile: (415) 901-8701
shankins@schiffhardin.com
amaddeford@schiffhardin.com

Brian Siff (admitted *pro hac vice*)
James E. Hanft (admitted *pro hac vice*)
SCHIFF HARDIN LLP
666 Fifth Avenue
17th Floor
New York, NY 10103
Telephone: (212) 753-5000
Facsimile: (212) 753-5044
bsiff@schiffhardin.com
jhanft@schiffhardin.com

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

ATTORNEYS FOR PLAINTIFF
BUYSAFE, INC.

I.     INTRODUCTION

The claims asserted by buySAFE are patent-eligible under 35 U.S.C. § 101 because they are limited to providing transaction performance guaranties in a specified computer network <u>after</u> closing an online commercial transaction and include specific transactional, temporal, and process limitations. These limitations are uniquely different from a traditional approach as they solve specific problems unique to online transactions that do not exist in offline commercial transactions. They do not preempt any "fundamental concept"—for example, the concept of the transaction performance guaranty—but, rather, are limited to a concrete application of an inventive idea. The claims use computers to transform a computer-based environment into a safe environment for online shopping. The U.S. Patent Office specifically determined that this idea, as limited, was not in the prior art, was not obvious, and was patent-eligible.

The recent decision of the Court of Appeals for the Federal Circuit, sitting *en banc*, in *CLS Bank Int'l v. Alice Corporation Pty. Ltd.*, Appeal No. 2011-1301, issued on May 10, 2013 with six separate opinions and no majority of the court agreeing as to any analytical framework for determining patent-eligibility. 2013 WL 1920941 (Fed. Cir. 2013). As stated by Chief Judge Rader, the decision has no precedential value beyond the judgment itself. *Id*. at *20, fn. 1.  Nevertheless, the opinions in *CLS Bank* all demonstrate that, under any of the analytical frameworks used, the asserted claims of U.S. Patent No. 7,644,019 (the "'019 Patent") are patent-eligible.

The common thread running through each opinion—and in prior precedent—is that patent claims cannot be so broad as to preempt a fundamental idea. Here, the '019 Patent claims do not preempt any fundamental idea. Instead, the claims contain limitations requiring: (1) an online commercial transaction; (2)  the binding of the

transaction performance guaranty service only <u>after</u> the online commercial transaction closes; and (3) the specific use of a computer and related infrastructure that processes the requests and underwriting. Taken together, these limitations provide an inventive concept separate and apart from the abstract idea of a transaction performance guaranty. And they meaningfully limit the abstract concept of a transaction performance guaranty to an actual and concrete application. Indeed, the '019 Patent discloses not simply a general computer, but a computer programmed to perform specific algorithms, in a very specific sequence of steps, and at very specific times, resulting in a highly specialized machine. The infrastructure required for this invention is clearly not abstract.

The claimed subject matter targets a specific problem: increasing trust in an online environment where typically anonymous parties are exposed to certain risks, many unique to the Internet-based environment. The '019 Patent provides a specific and unique solution: transaction performance guaranties provided over the Internet that bind after the online transaction closes. The patent cannot be divorced from computers and the Internet because online commercial transactions are essential to and at the heart of the invention. This concept cannot be performed absent computers, i.e. over the phone or with pen and paper, because it is tied to each specific online transaction with certain steps performed through the computer network only, between specific parties, after the transaction closes. This is done through specific computer code that effectively creates a specific machine.

For these reasons, Google's motion to dismiss should be denied.

## II.     ARGUMENT

The second *CLS Bank* decision—with its multiplicity of viewpoints—does not alter the place that the '019 Patent holds in the spectrum of what is, and what is not, patent-eligible.

### A.     Supreme Court and Federal Circuit Precedent Demonstrates the Patent Eligibility of the '019 Claims.

In its opposition brief, buySafe stated that the '019 Patent claims involve "technology and claims similar to those" in *CLS Bank*.  D.I. 40 at 7. Clearly, those statements were directed to the high level concepts of the *CLS Bank* claims. *See, e.g.*, *id.*, at 10. buySafe also briefed and orally argued that its claims contained limitations and a specific infrastructure, some of which are similar to those found in the system claims in *CLS Bank,* but not expressly claimed in the *CLS Bank* method claims. *See, e.g., id.* at 7-9.

The *en banc CLS Bank* Court evenly split on whether the system claims in that case were patent-eligible. But it is clear from decades of precedent, including *Bilski* and *Prometheus* and *In re Alappat,* that claims, like the ones in the '019 Patent, that require a specific machine to produce a useful, concrete and tangible result are patent-eligible. *See, e.g., Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 132 S. Ct. 1289, 1293 (2012) ("While a scientific truth … is not patentable invention, a novel and useful structure created with the aid of knowledge of scientific truth may be"); *In re Alappat*, 33 F.3d 1526, 1544-45 (Fed. Cir. 1994) (software used on a general purpose computer "creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions" and may be patent-eligible); *Bilski v. Kappos*, 130 S.Ct. 3218, 3227 (2010) (an important clue that a claim embracing an abstract idea is patent-eligible is if its use is tied to a machine). The Federal Circuit's *en banc* opinions, in essence, do not alter the fundamental analysis set forth in this precedent. At most, they clarify that the specific limitations of a claim are critical and must be considered in any § 101 analysis.

### B. The Claims Are Patent-Eligible Under the Rationales in *CLS Bank*

The *CLS Bank* opinions authored by Judge Lourie ("Lourie opinion") and Chief Judge Rader ("Rader opinion") set forth specific inquiries for a §101 determination.[1] Both opinions state that the first question is whether the claimed invention fits within one of the four classes set out in §101: a process, machine, manufacture or a composition of matter. They agree that the second question is whether any of the three judicial exceptions—law of nature, natural phenomenon, or abstract idea—bars the claim. 2013 WL 1920941, at *5, *33. After this initial inquiry, the Lourie and Rader opinions provide different considerations to determine patent eligibility. Under either approach, the claims of the '019 Patent are patent-eligible.

#### 1. The Claims Are Patent-Eligible Under the Lourie Opinion Rationale

First, the Lourie opinion emphasizes that all patents are presumed valid and rejects the idea that subject matter eligibility is a threshold question that the court must always consider first. *Id.* at *12. Next, Judge Lourie develops a two-step analysis for determining whether a claim is patent-eligible: the court must first identify the abstract

---

[1] This brief focuses on the two most stringent analyses—those provided by Judge Lourie and Chief Judge Rader. Under the analyses contained in the other opinions, there is no question that the '019 Patent claims patent-eligible subject matter. For example, the opinion authored by Judge Moore (joined by Chief Judge Rader and Judges Linn and O'Malley) states: "the key question is [] whether a claim recites a sufficiently concrete and practical application of an abstract idea to qualify as patent-eligible." 2013 WL 1920941, at *41 (warning against "stripping away all known elements from the … claims" and analyzing only the idea, as opposed to the claim as a whole) (finding system claims at issue patent-eligible). Judge Newman explained that "[a]ll scientific and technologic advance starts with fundamental principles," and argued that "when the subject matter is within the statutory classes in section 101, eligibility is established." *Id.* at *53 (finding claims patent-eligible). Judges Linn and O'Malley urged that "a careful assessment of the claims—with all their limitations—must guide our inquiry." *Id.* at *58. Where claims are directed to a specific way of doing something, the claims are patent-eligible. *Id.* (finding claims patent-eligible).

concept and then determine whether the balance of the claim contains substantive limitations that involve an inventive concept or genuine human contribution.

Applying this analysis, the first step requires that the Court "identify and define whatever fundamental concept appears wrapped up in the claim[.]" *Id*. at *9. For the *CLS Bank* claims, the abstract concept was "reducing settlement risk by effecting trades through a third-party intermediary[.]" *Id*. at *13. For the '019 Patent claims, the abstract concept is providing transaction performance guaranties.

In the second step, the Court must evaluate the balance of the claim for "additional substantive limitations that narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *Id.* at *10. There must be an inventive concept or "a genuine human contribution to the claimed subject matter." *Id*. The contribution must be more than "merely tangential, routine, well-understood, or conventional" and must "narrow the claim relative to the fundamental principal[.]" *Id*. at *11. For example, the Court in *Prometheus* determined the steps of giving a drug to a patient and drawing and testing blood failed to render the claims patent-eligible because they were necessary to every practical use of a natural law. *Id.*

As applied to the facts in *CLS Bank*, the Lourie opinion stated that the claims lacked any express language to define the computer's participation—there was no specific or limiting recitation of essential or improved computer technology and was merely "insignificant postsolution activity." *Id.* at *14. Next, the Lourie opinion found that the "shadow record" of the claims recited a basic function required of any intermediary in an escrow arrangement. Finally, the Lourie opinion stated that there was no indication in the record that the precise moment chosen to execute the end-of-the-day

instructions made any significant difference in the application of the abstract idea. *Id.* at *14-*15. Thus, the claim limitations were nothing "significantly more" than the underlying abstract principal of third party mediation for purposes of §101. *Id.* at *15.

The '019 Patent claims satisfy the test set forth by the Lourie opinion because they include limitations that involve inventive concepts separate and apart from the abstract idea. It is beyond doubt that the '019 Patent contains substantive limitations aside from transaction performance guaranties. Claim 1 is a representative example:

> 1. A method, comprising:
> receiving, <u>by at least one computer application program running on a computer of a safe transaction service provider</u>, a request from a first party for obtaining a transaction performance guaranty service with respect to an <u>online commercial transaction</u> <u>following closing of the online commercial transaction</u>;
> processing, <u>by at least one computer application program running on the safe transaction service provider computer</u>, the request by <u>underwriting the first party</u> in order to provide the transaction performance guaranty service to the first party,
> wherein the <u>computer of the safe transaction service provider offers</u>, <u>via a computer network</u>, the transaction performance guaranty service that binds a transaction performance guaranty to the <u>online commercial transaction</u> involving the first party to guaranty the performance of the first party <u>following closing of the online commercial transaction</u>.

Ex. 2, '019 Patent, Claim 1 (emphasis on inextricable computer limitations). In contrast to *CLS Bank*, the '019 Patent claims contain specific recitations of essential computer technology. The "receiving" and "processing" steps explicitly recite use of a computer application. The claims also require not only that "the computer" offers the transaction performance guaranty service, but that the guaranty be triggered by an "online commercial transaction." The computer is not added for speed or efficiency, nor is it merely "insignificant post-solution activity." Rather, the computer limitations and the post-transaction closing limitations are essential given the unique challenges of

6

anonymity with internet-based commercial transactions. The triggering and timing of the guaranty are also inextricably linked to the online commercial transaction. These claims are not about solving an old problem, but rather addressing a specific problem that arose only after online commercial transactions became possible. Without the online transaction limitation, the claimed method would not be needed or even possible. Moreover, the processing of the underwriting limitation requires the identification of and communication between parties through a network—such as the Internet—with all of its attendant verifications and protocols. These limitations cannot be performed absent a computer—for example by telephone, pen and paper—because it requires server systems executing the online commercial transaction. These limitations are integral to the claims, and Google's attempts to divorce the concept of transaction performance guaranty from the specific limitations of the claim is wholly improper.

Additionally, the claims require a temporal limitation that the guaranty binds after the transaction closes. This temporal limitation provides an inventive concept significantly different from the prior art, amounting to a significant human contribution, in the application of a "transaction performance guaranty." For example, the Examiner of the '019 Patent allowed the claims to issue in part because the prior art failed to teach or suggest "transaction performance guaranties offered and binding to an online transaction following closing of the online transaction." (Ex. 1, 10-30-09 Notice of Allowance, at 2-3.). This specific limitation precludes the possibility of preemption of transaction performance guaranties. This contrasts directly with *CLS Bank*, where the Lourie opinion found that the precise moment chosen to execute certain instructions did not make any significant difference in the application of the abstract idea. 2013 WL 1920941, at *15.

The '019 Patent's combination of a specific algorithm implementation in the form of an online commercial transaction, computer receiving and processing limitations and the temporal limitation provides more than "enough" of an inventive concept beyond the abstract idea itself to limit the claim to a narrower, patent-eligible application of that idea.

### 2. The Claims Are Patent-Eligible Under the Rader Opinion Rationale

The Rader opinion considers whether the "claim contains limitations that meaningfully tie that [abstract] idea to a concrete reality or actual application of that idea." *Id.* at 27. Under this analysis as well the '019 Patent claims are patent-eligible.

The Rader opinion found that a claim is not meaningfully limited if it "covers all practical applications of an abstract idea." *Id*. at *28. "If, to implement the abstract concept, one *must* perform the additional step, then the step merely restates an element of the abstract idea, and thus does not further limit the abstract concept to a practical application." *Id*. at *31. One must look for limitations that are more than "token pre- or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment." *Id*. at *29.

On the other hand, a claim is meaningfully limited if it requires a particular machine implementing a process or the claim recites "limitations which are essential to the invention" and are central to the solution itself. *Id*. When assessing computer implemented claims, the key "is whether the claims tie the otherwise abstract idea to a *specific way* of doing something with a computer, or a *specific computer* for doing something; if so, they likely will be patent-eligible [.]" *Id.* at *30.

The Rader opinion found the method claims in the *CLS Bank* case to be patent-ineligible because the four recited steps were all inherent in the concept of an escrow

8

such that the claim effectively claimed the abstract concept. *Id*. at *38-*39.

The '019 Patent claims are patent-eligible under the Rader opinion analysis. The claims include an online commercial transaction limitation and a temporal limitation—binding only after the online transaction closes—that are neither required nor inherent in transaction performance guaranties. These limitations "tie the otherwise abstract idea to a *specific way* of doing something with a computer" as well as "a *specific computer* for doing something" and render the claims patent-eligible. *See id*. at *30.

Moreover, one does not need to perform the step of binding only after the online transaction closes to implement transaction performance guaranties or even online transaction performance guaranties.[2] Thus, the temporal limitation is not simply a re-statement of the abstract idea. Additionally, the temporal limitation was not within the prior art and was a primary reason for patentability of the claims. This demonstrates that the temporal limitation is not an insignificant pre- or post-solution activity but instead central to this specific claimed invention. The claims do not cover all possible ways to achieve the result since the claim does not cover, for example, transaction performance guaranty services that bind before the online commercial transaction closes. *Compare with Bilski*, 130 S.Ct. 3231 (finding ineligible a patent on risk hedging because the claims would preempt use in all fields); *Prometheus*, 132 S.Ct 1289 (finding claims would preempt use of natural laws because the claimed steps were well understood, routine and conventional activity and necessary to make use of the law). Stated another way, the '019

---

[2] Google vacillates in its argument as to which abstract idea it claims is preempted by the '019 Patent: At hearing, Google argued that the idea of a "guaranty" was as old as Hammurabi. D.I. 49 at 13:13-14:3. Clearly, what is claimed in the '019 Patent is different from and does not preempt that idea. In briefing, Google argues that the preemptive concept is the performance guaranty of an online transaction—a proposition for which there is no support whatsoever. *See* D.I. 31 at 14.

9

Patent claims do not simply put a well-known concept onto a computer, but rather claim and are limited to a *specific way* of providing transaction performance guarantees by a computer that the U.S. Patent Office determined was never done before. Competitors are still free to provide other transaction performance guarantees. And there is no preemption of any abstract concept.

Moreover, as set forth in buySafe's opposition memorandum, a particular machine is required to perform the recited claim limitations. D.I. 40, at 12-14. There must be an online commercial transaction that closes. This requires, at a minimum, at least one computer that contains algorithms for providing an offer and links to a second computer capable of accepting that offer. The claim requires the transaction performance guaranty, offered by a third-party provider, bind only after online acceptance of the online purchase offer. Moreover, the processing of the underwriting limitation requires transmission of information and verification protocols for the specific computers within the network. *See, e.g.*, Ex. 2, '019 Patent, col. 15, ll. 1-30. This requires concrete, specific code creating a specialized machine that transmits this information to the third-party provider. Thus, the '019 Patent describes a specific computer programmed using specific algorithms. The infrastructure required by the claims is clearly not abstract.

In short, there is no preemption of the concept of transaction performance guaranties because the claims are limited to a concrete and actual application of the idea. As such, the claims are patent-eligible under the Rader opinion's rationale as well.

## III.   CONCLUSION

For these reasons, the Court should deny Google's Motion for Judgment on the Pleadings.

| | |
|---|---|
| Dated:  May 28, 2013 | Respectfully submitted, |

FARNAN LLP

By:   /s/ Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

Stephen M. Hankins (admitted *pro hac vice*)
Alison Maddeford (admitted *pro hac vice*)
SCHIFF HARDIN LLP
One Market
Spear Street Tower, 32nd Floor
San Francisco, CA 94105
Telephone: (415) 901-8756
Facsimile: (415) 901-8701
shankins@schiffhardin.com
amaddeford@schiffhardin.com

Brian Siff (admitted *pro hac vice*)
James E. Hanft (admitted *pro hac vice*)
SCHIFF HARDIN LLP
666 Fifth Avenue
17th Floor
New York, NY 10103
Telephone: (212) 753-5000
Facsimile: (212) 753-5044
bsiff@schiffhardin.com
jhanft@schiffhardin.com

ATTORNEYS FOR PLAINTIFF
BUYSAFE, INC.