IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BUYSAFE, INC., :
 :
         Plaintiff, :
 :
     v. : C.A. No. 11-1282-LPS
 :
GOOGLE INC., :
 :
         Defendant. :

Joseph J. Farnan, Jr., Esq., Brian E. Farnan, Esq., FARNAN LLP, Wilmington, DE.
    Attorneys for Plaintiff buySAFE, Inc.

Jack B. Blumenfeld, Esq., Paul Saindon, Esq., MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, DE.
    Attorneys for Defendant Google Inc.

**MEMORANDUM OPINION**

July 29, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is Defendant Google Inc.'s ("Defendant") motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). (D.I. 31) Defendant argues that Plaintiff buySAFE, Inc.'s ("Plaintiff") U.S. Pat. No. 7,644,019 ("the '019 patent") is invalid under 35 U.S.C. § 101 because it is directed to non-patent-eligible subject matter.

The parties completed briefing for this motion on August 31, 2012. (D.I. 32, 40, 42) The Court heard oral argument on October 26, 2012.[1] (D.I. 49) (hereinafter "Tr.") On May 17, 2013, the Court ordered the parties to submit supplemental briefs "for the purpose of addressing the effect, if any, of the *en banc* decision of the United States Court of Appeals for the Federal Circuit" in *CLS Bank International v. Alice Corp. Pty Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013), which was issued on May 10, 2013. (D.I. 58) The parties submitted their supplemental briefs on May 28, 2013. (D.I. 59, 60)

For the reasons set forth below, the Court will grant Defendant's Rule 12(c) motion.

## I. BACKGROUND

Plaintiff filed this patent infringement action against Defendant on December 22, 2011, alleging that Google's "Trusted Stores" program infringes the '019 patent. (D.I. 1) The '019 patent is entitled "Safe Transaction Guaranty" and generally relates to providing a guaranty service for online transactions.

The '019 patent contains two independent claims, claim 1 and claim 39. Claim 1 is a process claim. Claim 39 requires a "machine readable medium" capable of performing the process of claim 1. The parties agree that, for purposes of Defendant's Rule 12(c) motion, there

---

[1] At the same hearing, the parties presented their claim construction arguments. The Court's claim construction ruling, which is being issued separately today, has no impact on Defendant's Rule 12(c) motion.

are no material differences between claims 1 and 39. (D.I. 32 at 3, D.I. 40 at 2)

Claim 1 is reproduced below:

> A method, comprising:
>
> receiving, by at least one computer application program running on a computer of a safe transaction service provider, a request from a first party for obtaining a transaction performance guaranty service with respect to an online commercial transaction following closing of the online commercial transaction;
>
> processing, by at least one computer application program running on the safe transaction service provider computer, the request by underwriting the first party in order to provide the transaction performance guaranty service to the first party,
>
> wherein the computer of the safe transaction service provider offers, via a computer network, the transaction performance guaranty service that binds a transaction performance guaranty to the online commercial transaction involving the first party to guarantee the performance of the first party following closing of the online commercial transaction.

Claims 1, 14, 39, and 44 are the only asserted claims in this action, and the only claims Defendant contends are invalid. (Tr. at 26-27) Dependent claims 14 and 44 are identical, except that claim 14 depends from claim 1 while claim 44 depends from claim 39.

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial." When evaluating a motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). A Rule 12(c) motion will not be granted "unless the movant

2

clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221. This is the same standard as a Rule 12(b)(6) motion to dismiss. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion).

## III. DISCUSSION

Defendant seeks judgment on the pleadings that the '019 patent is invalid because it fails to meet the subject matter eligibility requirements of 35 U.S.C. § 101.[2] (D.I. 32 at 1) Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title." 35 U.S.C. § 101. There are three recognized exceptions to Section 101 – "laws of nature, physical phenomena, and abstract ideas" – and if a claim is directed on one of these exceptions, it is not eligible for patent protection. *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010). Defendant's Rule 12(c) motion concerns only the "abstract ideas" exception. (D.I. 32 at 1)

To determine whether a patent claims an abstract idea, courts frequently apply the

---

[2]The standard of proof to establish the invalidity of a patent is clear and convincing evidence. *See WMS Gaming Inc. v. International Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999).

3

"machine-or-transformation" test. *See Bilski*, 130 S. Ct. at 3227. The Supreme Court has cautioned, however, that the machine-or-transformation test is not the sole test for patent-eligibility. *See id.* Accordingly, courts also should more generally examine the abstract nature of the claims. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011).

Defendant contends that the asserted claims are not patent-eligible because they: (1) fail the machine-or-transformation test; and (2) are directed to an abstract idea. (D.I. 32 at 8)

### A. Machine-or-Transformation

Under the machine-or-transformation test, a process claim is patent-eligible if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Bilski*, 130 S. Ct. at 3224 (internal citations omitted). Because Plaintiff has not argued that any article is transformed (Tr. at 51-52), the Court's analysis is limited to the "machine" prong of the test.

"[T]o impart patent-eligibility to an otherwise unpatentable process under the theory that the process is linked to a machine, the use of the machine must impose meaningful limits on the claim's scope." *CyberSource*, 654 F.3d at 1375 (internal quotation marks omitted). The Federal Circuit has stated that a machine will only "impose a meaningful limit on the scope of a claim [when it plays] a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations." *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010). A computer is not a significant part the process if that process can be performed without a computer. *See CyberSource*, 654 F.3d at 1375 ("[M]erely

4

claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the machine-or-transformation test.").

The '019 patent, on its face, explains that the entire inventive process can be performed by a human. For instance, with respect to the key "underwriting" step, the '019 patent states that: "[t]he underwriter may be *a person*, a corporation that *carries out the underwriting process* either *manually* or automatically through a computer application program or semi-automatically." ('019 patent at col. 6, ll. 57-60) (emphasis added)[3] At oral argument, Plaintiff's counsel acknowledged that "if the transaction was not online," each of the steps "could be conducted without a computer." (Tr. at 61) A method that can be performed entirely in the human mind is an abstract idea and is not eligible for patent protection. *See CyberSource*, 654 F.3d at 1375.

Nonetheless, Plaintiff contends that the claimed process is patent-eligible because it takes place online, and online transactions by definition require a computer. (Tr. at 45-48, 51) The Court disagrees. In *CyberSource*, 654 F.3d at 1370, the patent was also limited to online transactions – "a method for verifying the validity of a credit card transaction over the Internet" – yet the Federal Circuit found the patent invalid under Section 101.

Plaintiff further contends that "there is simply no practical way to do [the process of the

---

[3] At oral argument, Plaintiff argued that the Court could not look to the specification of the '019 patent for purposes of evaluating patent-eligibility in a Rule 12(c) context. (Tr. at 56) But the authority cited by Plaintiff does not stand for this proposition, as it did not even involve a Rule 12(c) motion. *See DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1317 (Fed. Cir. 2012) (appeal of summary judgment finding of invalidity). Moreover, Plaintiff conceded that the Court can look to the prosecution history for purposes of Rule 12(c) (Tr. at 55), and the specification is at least as pertinent to the Court's inquiry.

'019 patent] mentally or with a pen and paper," because it involves "millions" of online transactions. (Tr. at 54) That argument is not persuasive. The '019 patent describes a well-known, and widely-understood concept – a third party guarantee for a sales transaction – and then applies that concept using conventional computer technology and the Internet. Merely using a computer to perform more efficiently what could otherwise be accomplished manually does not confer patent-eligibility. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can.*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible."); *MySpace, Inc. v. Graphon Corp.*, 672 F.3d 1250, 1267 (Fed. Cir. 2012) ("While running a particular process on a computer undeniably improves efficiency and accuracy, cloaking an otherwise abstract idea in the guise of a computer-implemented claim is insufficient to bring it within section 101.").

The '019 patent likewise does not become patent-eligible by explicitly reciting a "computer" in each independent claim. In the '019 patent, the computer (or machine readable medium) is used only for processing – a basic function of any general purpose computer. The claims do not require specific programming, nor are they tied to any particular machine. The claims do not provide any detail as to how the computer is involved in the claimed process, or describe the significance of the computer to that process. In fact, the patent's process would be performed exactly the same way by a person and by a computer, the only difference being that the computer performs the process significantly faster than a human. Such a process is not patent-eligible. *See DealerTrack*, 674 F.3d at 1333 (finding claims invalid because they are "silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method"); *CyberSource*, 654 F.3d at

6

1375 (emphasizing "that the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers"); *MySpace*, 672 F.3d at 1267 (finding that claim is not patent eligible "simply because it is computer-implemented or invokes the use of the Internet").

Contrary to Plaintiff's argument (D.I. 59 at 9), the "temporal limitation" of the claims – requiring "bind[ing] a transaction performance guaranty to the online commercial transaction ... following closing of the online commercial transaction" – does not save the validity of the claims. The temporal limitation is not dependent on any specific programming, nor is it tied to any particular machine. Moreover, according to the claim, *every* step of the claimed method occurs "following closing of the online commercial transaction," including the very first "receiving" step. Thus, the claim is directed to the concept of guaranteeing the performance of a transaction after that transaction is closed. This is not sufficient to transform an unpatentable abstract idea into a patent eligible application of the idea.

Plaintiff's original briefs relied heavily on the panel opinion in *CLS Bank Int'l v. Alice Corp. Pty.*, 685 F.3d 1341, 1351 (Fed. Cir. 2012), which reasons that "a claim that is drawn to a specific way of doing something with a computer is likely to be patent eligible whereas a claim to nothing more than the idea of doing that thing on a computer may not." (D.I. 40 at 6-12) The *CLS* panel's opinion was subsequently vacated and reversed by an *en banc* ruling of the Federal Circuit, which found the claims at issue to be ineligible for patent protection. *See CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269 (Fed. Cir. 2013) (en banc). The Federal Circuit's *en banc* decision in *CLS* reiterated the principle that "simply appending generic computer functionality to lend speed or efficiency to the performance of an otherwise abstract concept does not

7

meaningfully limit claim scope for purposes of patent eligibility." *Id.* at 1286 (citing, *inter alia, Bancorp*, 687 F.3d at 1278; *Dealertrack*, 674 F.3d at 1333). But, even under the reasoning of the *CLS* panel decision, the Court would have found the claims patent-ineligible because Plaintiff has not shown that the '019 patent claims are directed to any specific way of using a computer to guarantee a safe transaction. Rather, as described above, the claims are directed to a method that just happens to be performed by a computer. Under the now governing *en banc* decision in *CLS*, Defendant's argument for patent-ineligibility is even stronger.

For these reasons, the Court concludes that independent claims 1 and 39 of the '019 patent fail the machine-or-transformation test. So do dependent claims 14 and 44, as these claims do not recite any additional computer elements.[4]

### B. Abstract Idea

Because the Supreme Court has found that the machine-or-transformation test is not dispositive in a Section 101 inquiry, the Court proceeds to examine more generally the abstract nature of the claims. *See Cybersource*, 654 F.3d at 1371. "The focus of this inquiry is on the extent to which the application of an abstract idea is specific and/or limited, because inventions with specific applications are less likely to be abstract." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613, 621 (D. Del. 2011) (internal quotation marks omitted).

The Court concludes that the '019 patent is directed to an abstract – and, therefore, unpatentable – process of underwriting commercial transactions by a third party to guarantee

---

[4] In opposing Defendant's motion, Plaintiff did not rely on any element of claims 14 and 44 that is absent from the corresponding independent claims.

8

performance. The claimed concept is not directed to any specific device or system, is not limited to a concrete application, and is not limited to any specific industry. Allowing Plaintiff to patent the general concept of performance guaranties would effectively grant a monopoly over an abstract idea. Instead, the Court will grant Defendant's motion for judgment on the pleadings with respect to claims 1, 14, 39, and 44.

## IV. CONCLUSION

The Court concludes that claims 1, 14, 39, and 44 of the '019 patent are not eligible for patent protection under 35 U.S.C. § 101 and, therefore will grant Defendant's motion for judgment on the pleadings. An Order consistent with this Memorandum Opinion will be entered.