# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BUYSAFE, INC., | : |
|         Plaintiff, | : |
|     v. | :    C.A. No. 11-1282-LPS |
| GOOGLE INC., | : |
|         Defendant. | : |

Joseph J. Farnan, Jr., Esq., Brian E. Farnan, Esq., FARNAN LLP, Wilmington, DE.
    Attorneys for Plaintiff buySAFE, Inc.

Jack B. Blumenfeld, Esq., Paul Saindon, Esq., MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, DE.
    Attorneys for Defendant Google Inc.

## MEMORANDUM OPINION

July 29, 2013
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

Pending before the Court is the issue of claim construction of various disputed terms of U.S. Pat. No. 7,644,019 ("the '019 patent").[1]

## I. BACKGROUND

Plaintiff buySAFE, Inc. ("Plaintiff") filed this patent infringement action against Defendant Google Inc. ("Defendant") on December 22, 2011, alleging that Google's "Trusted Stores" program infringes the '019 patent. (D.I. 1) The '019 patent is entitled "Safe Transaction Guaranty" and generally relates to providing a guaranty service for online transactions.

The parties completed briefing on claim construction on September 7, 2012. (D.I. 38, 39, 43, 44) The Court held a *Markman* hearing on October 26, 2012. (D.I. 49) (hereinafter "Tr.")

## II. LEGAL STANDARDS

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). Construing the claims of a patent presents a question of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 388-90 (1996). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. Instead, the Court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . .

---

[1] In a separate Memorandum Order issued today, the Court granted Defendant's motion for judgment on the pleadings that the '019 patent is invalid as directed to subject matter that is not patent-eligible. Nevertheless, for reasons of judicial efficiency, and as requested by Plaintiff (*see* Tr. at 66-67), the Court will construe the disputed terms of the '019 patent.

[which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent . . . ." *Id.* (internal citation omitted).

"Differences among claims can also be a useful guide. . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven

2

when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks omitted), *aff'd*, 481 F.3d 1371 (Fed. Cir. 2007).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980. The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

A court may also rely on "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the Court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. Overall, while extrinsic evidence "may be useful" to the Court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19.

3

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007).

## III. CONSTRUCTION OF DISPUTED TERMS

Only two claim terms are in dispute, both of which are highlighted below in claim 1:

> A method, comprising:
>
> receiving, by at least one computer application program running on a computer of a safe transaction service provider, a request from a first party for obtaining a ***transaction performance guaranty*** service with respect to an online commercial transaction following closing of the online commercial transaction;
>
> processing, by at least one computer application program running on the safe transaction service provider computer, the request by ***underwriting*** the first party in order to provide the ***transaction performance guaranty*** service to the first party,
>
> wherein the computer of the safe transaction service provider offers, via a computer network, the transaction performance guaranty service that binds[2] a ***transaction performance guaranty*** to the online commercial transaction involving the first party to ***guarantee*** the performance of the first party following closing of the online commercial transaction.

---

[2]The parties have agreed that the word "binds," as used in claims 1 and 39, means "associates."

4

A.   "transaction performance guaranty" and "guaranty"

|  | Transaction Performance Guaranty |
|---|---|
| **Plaintiff's Proposed Construction** | "protection associated with performing some or all of the terms of a purchase" |
| **Defendant's Proposed Construction** | "an irrevocable promise to fulfill another's obligation in a transaction" |
| **Court's Construction** | "protection associated with performing some or all of the terms of a purchase" |

|  | Guaranty |
|---|---|
| **Plaintiff's Proposed Construction** | plain and ordinary meaning. In the alternative, "protection associated with some or all of the terms of an agreement" |
| **Defendant's Proposed Construction** | "an irrevocable promise to fulfill another's obligation" |
| **Court's Construction** | "protection associated with some or all of the terms of an agreement" |

As an initial matter, the parties do not agree on the claim language requiring construction. Plaintiff believes the Court should construe the term "transaction performance guaranty," while Defendant proposes to construe just the word "guaranty." The issues raised by both terms are the same: (1) whether a "guaranty" must be irrevocable; and (2) whether Plaintiff's definition for the word "guaranty" is overly broad. On both issues the Court agrees with Plaintiff. Thus, the Court will adopt Plaintiff's proposed construction.

Defendant contends that a guaranty must be "irrevocable." (D.I. 38 at 11-12) This argument is based on the prosecution history, in which the patentee stated that "the claimed invention pertains to performance guaranties which are, ***by definition***, non-cancelable or ***irrevocable***." (D.I. 38 Ex. 2 at 84) (emphasis added) According to Defendant, this statement amounts both to an express definition by the patentee acting as a lexicographer and a disclaimer

5

of scope. (Tr. at 90) The Court is not persuaded.

To act as a lexicographer, "the patentee must clearly express an intent to redefine the term." *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012) (internal quotation marks omitted). Similarly, to disavow claim scope, "the alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-1326 (Fed. Cir. 2003). There is no express "intent to redefine" or "clear and unmistakable" disclaimer when the prosecution history is subject to more than one reasonable interpretation. *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1332 (Fed. Cir. 2004). Here, the prosecution history is subject to multiple reasonable interpretations.

The prosecution history cannot be viewed in abstract; context is important. The statement identified in the prosecution history by Defendant was made in the context of a discrete set of claims (claims 118, 119, and 124), each of which explicitly used the word "irrevocable." (Tr. at 92) Based on this, the Court could reasonably conclude that the statement-at-issue was intended only to clarify the scope of claims 118, 119, and 124. Plaintiff did not raise the same "irrevocability" argument for the remaining pending claims – which did not include the "irrevocable" language, but were rejected over the same art. When Plaintiff later dropped claims 118, 119, and 124, the "irrevocable" argument seems to have been dropped as well. (*See* Amendment of June 17, 2008) The Court does not find a "clear and unambiguous" disclaimer.

Despite Defendant's criticisms, Plaintiff's proposed construction is not overly broad. Nor does it render the claims unintentionally broad enough to cover a wide variety of "vague, undefined obligation[s]," as Defendant contends. (Tr. at 84) Rather, the claims provide a

6

number of additional restrictions with respect to the claimed guaranty. For instance, the claims require the guaranty to be bound to a "commercial transaction" and used to "guarantee the performance of the first party." (*See, e.g.*, claim 1)

The Court likewise is not persuaded by Defendant that the specification distinguishes a "guaranty" from other forms of protection, such as an escrow or a performance bond. (D.I. 43 at 2-3; Tr. at 85, 98) Certainly the specification identifies certain drawbacks of using "escrow" and "performance bonds" in an online context. (*See, e.g.*, '019 patent at col. 1, ll. 47-48) ("One disadvantage of this solution is that it introduces a delay into the transaction.") But the fact that a performance bond may not be suitable for an online transaction does not mean that a performance bond is not a type of guaranty.

**B.     "underwriting"**

|  |  |
| --- | --- |
| **Plaintiff's Proposed Construction** | "determining that it is acceptable to assume a risk on behalf of [the first party]" |
| **Defendant's Proposed Construction** | Indefinite, but to the extent it can be construed: "process to determine whether to insure a transaction" |
| **Court's Construction** | "a process to determine whether to guaranty a transaction." |

During oral argument, the parties agreed that the term "underwriting" means "a process to determine whether to guaranty a transaction." (Tr. at 105-106, 111) The Court will adopt this construction. As discussed above, the Court has also adopted Plaintiff's proposed construction for the word "guaranty." The Court recognizes that Defendant's agreement to the above construction of "underwriting" was conditioned on the term "guaranty" being construed as Defendant proposed. (*Id.* at 112) Specifically, Defendant objected to the term "underwriting" being construed in a way that does not embody the concept of "assuming the obligation of

7

[another]." (*Id.*) The Court concludes that, in the context of the '019 patent, "underwriting" does not have such a limited meaning. Instead, the specification broadly describes underwriting as "mak[ing] a qualification decision about each service applicant." ('019 patent at col. 6, ll. 43-45)

Defendant contends that the term "underwriting" is indefinite. (D.I. 38 at 13) The Court does not agree. *See generally Personalized User Model LLP v. Google, Inc.*, 2012 WL 295048, at *22 (D. Del. Jan. 25, 2012) (stating Court "does not permit summary judgment arguments, including indefiniteness arguments, during the claim construction phase of the litigation"). A claim is "sufficiently definite to inform the public of the bounds of the protected invention" unless the term is "insolubly ambiguous." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008). Defendant has failed to establish "by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Id.* at 1249.

The specification provides a broad explanation of the underwriting process. ('019 patent at col. 6, ll. 35-45) ("mak[ing] a qualification decision about each service applicant") The specification also provides examples of the type of information used during the underwriting process. (*Id.* at col. 6, ll. 45-56 and col. 10, ll. 8-24) (identifying credit information, merchant ratings, governmental archives, public information sources, social security numbers, etc.) The specification further explains that an underwriter may be "a person, a corporation that carries out the underwriting process either manually or automatically through a computer application program or semi-automatically." (*Id.* at col. 6, ll. 57-60) Based on the disclosure in the

8

specification, the term "underwriting" is sufficiently definite.

## IV. CONCLUSION

For the foregoing reasons, the Court will construe the disputed claim terms in the '019 patent consistent with this Memorandum Opinion. An appropriate Order follows.